Parker, C. J.
The error in the process now before us, on cer-
tiorari, which is relied upon as a cause for quashing the proceedings, is, that the respondent, when on trial before the justice upon the complaint of the clerk of the company, was not permitted to prove, by the oath of a physician, that he was infirm, and unable to attend military duty on the day on which he is charged with delinquency. That he was thus refused, appears by the certificate of the justice of the course of the proceedings before him ; and if such evidence ought to have been received, the proceedings must be quashed, as we cannot order a new trial.
The determination of the justice was founded, we think, upon too narrow and literal a construction of the terms of the militia act now in force. The 29th section of the act establishes [ * 542 ] the mode in which an exemption shall * be obtained on account of bodily infirmity; and the mode not having been pursued by the supposed delinquent, who was on trial, the *485 justice considered that he was precluded from showing an actual inability on the day he was ordered to appear.
But we are satisfied that the construction adopted by the Court of a similar provision in the statute of 1793, c. 14, was right, and is equally applicable now. Indeed, the case of Howe vs. Gregory, cited for the respondent, has settled the law upon this point; and we must consider that decision as acquiesced in and approved by the legislature, who, notwithstanding the promulgation of this judicial construction of the former act, have enacted a provision in the last militia law, substantially and almost literally the same with that which received the construction.
Indeed, it is manifest, from the terms of the section, that the exemption there intended is prospective, and in a degree permanent; and the effect of it is, to render unnecessary any warning of the soldier who has obtained it, he being virtually struck off the roll during the term for which his exemption continues. So that, even if his disability should be removed, he is not liable to military duty until the term of his exemption shall cease. Another effect is, to render all proof of infirmity unnecessary in case he should be prosecuted for neglect; for, upon producing his certificate, he must be immediately discharged, without any proof whatever of his inability to perform the duty he was required to perform. •
But we think it could never have been the intention of the legislature to prevent a party complained of from showing, on his trial, that he had committed no offence, notwithstanding he had not obtained a previous exemption. Actual sickness and casualty, to a degree which renders the party incapable of performing the duty, one would think would at all times protect him from the penalty. Even the discipline of the camp in a regular army would admit of such an excuse. The offence intended to be punished is, in the words * of the statute, unnecessary neglect of [ * 543 ] duty. To show that the non-performance of it was necessary, from causes which the party could not foresee or prevent, is certainly disproving the charge. In many cases, a physical impossibility of obeying the summons may have occurred; and surely it would be a harsh construction of a statute to subject such a person to a penalty for unnecessary neglect of duty.
But it is said there is another provision of the statute, calculated to meet circumstances of this nature; and that, unless the measures therein prescribed are pursued, it is the intention of the legislature that punishment should fall even upon such as have actually been detained from duty by necessity. The article alluded to provides that all excuses for non-appearance must be made, within eight days *486 after any training, to the commanding officer of the company, who upon satisfactory evidence of inability to appear, may excuse.
Even this does not take away the right of showing innocence at the trial. It should be considered that this is a penal statute, and that the party charged is proceeded against criminally; and we cannot imagine a case, where punishment can be inflicted for an offence, without some wrong or wilful negligence on the part of the accused.
What, then, is the meaning of this provision of the statute ? It was for the convenience of the parties interested; of the clerk, who is to be the accuser, that he may not institute a fruitless complaint: of the party liable to be accused, that he may be protected from the trouble and expense of a prosecution. But his failing to procure his amnesty from the captain cannot deprive him of the right of proving that he has not been guilty of the offence with which he was charged. He is, however, subject to a mulct for his negligence, or even his misfortune, in not seasonably applying to the captain for an excuse. For in such case, although acquitted, he gets no indemnity for his costs, if the captain approved the prosecution [ * 544 ] * But there are other reasons for this provision, suffi ciently strong to have induced the legislature to enac' it, without supposing that they intended by it to interrupt the ordinary course of trials, by the exclusion of evidence that the party charged is innocent.
Many reasons may be supposed which would, in the mind of a discreet commander, amount to an excuse, which yet would not constitute a legal defence. The soldier may be bound, by some moral or religious obligation, to absent himself from military duty. He may, at the very time of training, be summoned to the sick or dying bed of a child or parent. He may be engaged in some urgent and indispensable work of charity. He may be called from his home upon some business upon which depends the entire welfare of his whole family. All these are certainly excuses in foro conscientiee; and although not a legal answer to a prosecution, every one will see the injustice of subjecting him to a penalty, if they truly exist. In such cases, the captain or commander may excuse, and prevent a prosecution; and unless he is influenced by unworthy motives, he will always in such cases excuse. There is, therefore, sound reason for this dispensing power in the commanding officer, without giving it the consequences which the justice, in the case before us, seems to have attributed to it.
But the subject may be viewed in another light. There is no appeal, upon the doctrine contended for, from an unreasonable *487 refusal of the officer to excuse, and no remedy, if the party was prevented by irresistible necessity from applying to him within the eight days. Suppose a man, warned to attend a training, is seized with a disease which would become mortal by exposure; or loses a limb, so that he cannot proceed to the place of training; and that the captain should refuse to excuse, or the sufferer should be unable to apply to him within eight days; why, the machine of justice, or rather injustice, must move on, and the sufferer must be made a culprit. Such a construction of the statute cannot be necessary to give effect to military * discipline; and [ * 545 ] until it shall be made explicitly to appear to be the intent of the legislature, we cannot adopt it.
For these reasons, (which have been given at some length because, notwithstanding the decision before referred to, there seems to be a misunderstanding of the subject amongst the militia officers and justices of the peace,) we are satisfied that the justice erred in refusing to admit the evidence offered of the infirmity of Fitz. Some inconveniences may follow this decision. But all systems are liable to them; and it will not do, in a free country, to attempt by legislation, even on militia subjects, to attain to perfect order, at the expense of essential rights and principles, (a)

Proceedings quashed.

 Vide Commonwealth vs. Smith, ante, 456, and cases cited in note.