# REPORTS.

## WASHINGTON COUNTY.

### March Term, 1836.

PRESENT, Hon. STEPHEN ROYCE,
   "  SAMUEL S. PHELPS,  } *Assistant Justices.*
   "  ISAAC F. REDFIELD,

### JOHN A. WARNER vs. STOCKWELL & FOSTER.

A citizen is not exempted from enrolment in the militia on account of bodily infirmity, if his infirmity is not open to observation, and is un- known to the officer making the enrolment. And upon being enrolled he becomes subject to military jurisdiction, until disenrolled in the man- ner prescribed by statute.

In the imposition and remission of fines militia officers act judicially, and in cases within their jurisdiction their final decisions are conclusive.

Sergeants' warrants may be signed in blank, and entrusted to captains, with authority to fill up and deliver out the same to the sergeants of their respective companies. And when such a warrant is accepted and acted upon by a sergeant, its validity is not impaired by the fact, that it had previously been filled up for another person, and delivered to him.

The doings of a sergeant under a writ of execution for a fine, if regular in form, will be sustained by proof that he was a sergeant *de facto*, having been duly elected and sworn.

If a debtor is committed on a writ of execution, when it ought to have been levied on property, his remedy is by an action against the officer. The commitment is not thereby rendered void. And it *seems*, that to entitle the debtor to any redress in such a case, he should have been willing to acquiesce in the taking of his property.

VOL. IX.        2

Washington,
    March,
     1836.

J. A. Warner
      vs.
Stockwell &
   Foster.

Trespass for assault and battery, and false imprisonment. The plaintiff had been enrolled as a private in a company of militia commanded by the defendant Stockwell, and having been amerced in a fine for non-appearance at a training of said company, was committed to jail by the defendant Foster, as sergeant of said company, on an execution for the fine aforesaid. This was the trespass complained of. Plea *not guilty*, with notice of justification. The questions raised on trial will appear from the following bill of exceptions :

Plaintiff made a *prima facie* case under the general issue, and rested. The defendants then showed the existence of the company, that plaintiff resided within the limits of the company, and was between the age of eighteen and forty-five years :—that defendent Stockwell, being duly commissioned and sworn as Lieutenant, was commanding officer of the company,— that plaintiff was enrolled and warned to attend the annual June training in the year 1835 ; that he did not attend and was amerced in the sum of $2, by defendant Stockwell, for *non appearance*.

The citation issued by defendant Stockwell to plaintiff, dated 31st July, 1835, and the return thereon, were offered by defendant, objected to by plaintiff, and admitted.

The execution bearing the same date, but in fact not issued until the expiration of twelve days from the return of said citation, directed to defendant Foster, as sergeant, and upon which it was admitted he afterwards committed plaintiff to the jail, on his refusing to pay the amount thus specified, was then offered by defendants, objected to by plaintiff, but admitted by the Court.

The defendants, further to sustain the issue on their part, offered in evidence a warrant signed by the Colonel of the regiment to defendant Foster, as sergeant, which was objected to, but admitted. Defendants also proved that defendant Foster had been sworn to the discharge of the duties of Sergeant, and had said warrant in his possession before he arrested plaintiff. The plaintiff then offered to show, that at the time he was warned to do military duty as aforesaid, and ever since, and for many years before that time, and from childhood, he had been laboring under very considerable bodily infirmity, in consequence of having a rib or ribs fractured many years ago, so that he ought not to be subject to do military duty, and was not an *able-bodied* man within the meaning of the statute ; and after the

training named, and before the amercement, he notified the de-
fendant Stockwell of said disability.   The plaintiff also offered
to show, that the warrant aforesaid was signed by said  Colonel
in blank, and given to defendant Stockwell, to fill up as occasion
might require ; that he had filled it up with the name of and de-
livered it to another sergennt, and afterwards, without his con-
sent, taken it back, and made use of it for defendant Foster.
This testimony was objected to, and rejected by the Court.

The plaintiff also offered testimony tending to show, that
within twelve days after said training, he applied to defendant
Stockwell to be excused from any amercement on account of
said neglect, by reason of said bodily infirmity, and that said
Stockwell declared his excuse insufficient.

Testimony was also given on the part of the plaintiff tending
to show, that on the first day of August 1835, he applied to one
Atwood, Colonel of the regiment to which this company belong-
ed, to remit said fine, and on that occasion showed him a certifi-
cate of the surgeon of the regiment, that his disability, before
named, was sufficient to excuse him from military duty ; that the
Colonel informed the plaintiff that he could not attend to the
hearing of the matter within the next six days, and recommend-
ed him to apply to some other of the field officers, but finally
appointed the first Saturday in September after, for hearing the
matter, of which defendant Stockwell was immediately notified,
and that he issued the execution, notwithstanding that, before the
time set for hearing, plaintiff was committed on it.   The plaintiff
also gave evidence tending to show, that at the time, and before
he was arrested on said execution, he had, within a few rods of
the place, personal property to a large amount, of which he was
the undoubted owner, and this was known to both defendants ;
and that he requested defendant Foster (Stockwell being pre-
sent) to levy the execution upon said property instead of his
body, and that he refused to pay the money on said execution,
only because he found it would preclude him from afterwards
contesting the validity of the execution ; and so informed defend-
ants ; and that both defendants absolutely refused to comply
with said request, saying they should immediately commit him to
jail unless the money was paid, and therefore did forthwith arrest
and commit him.

The Court decided that if the testimony on the part of the
defendant was believed, and notwithstanding the testimony on

the part of the plaintiff, and so charged the jury, the defendants were entitled to a verdict. To which decisions of the Court in rejecting testimony, and in their charge to the jury, the plaintiff excepted ; verdict for defendants.

*L. B. Peck for plaintiff.*—1. The Court erred in excluding the evidence offered, tending to show that the plaintiff was not liable to do military duty. The power and jurisdiction of militia officers, in the assessment of all fines, is special and limited. If they exceed their jurisdiction, they, as well as the officer, who undertakes to execute their process, become trespassers. (2 Wm. Black. 1145. 10 Co. 75. 1 Saund. 74, and the notes.) The position will not be controverted, that to give validity to the proceedings of any Court, it must have jurisdiction of the *person* of the defendant, and of the cause. (*Borden* vs. *Fitch*, 15 Johns. Rep. 141. *Mills* vs. *Martin*, 19 Johns. Rep. 33.) If the plaintiff was not liable to do military duty by reason of bodily infirmity, or was otherwise exempt, the defendant Stockwell, had no jurisdiction of his person, and all the proceedings against him were a nullity. In *Wise* vs. *Withers*, (3 Cranch Rep. 331.) the Supreme Court of the United States, held, first, that a Justice of the Peace within the District of Columbia, was not liable to do military duty ; secondly, that a Court Martial had no jurisdiction over him ; and, thirdly, that the Court and the officer who arrested him, were all trespassers. This case is cited and approved by Chief J. Spencer in *Mills* vs. *Martin*, and it would seem to be decisive of the present question. To the same point is Sabin's case cited by Lord Mansfield in *Mostyn* vs. *Fabrigas*, (1 Cowp. 175.) *Curry* vs. *Pringle*, 11 Johns. Rep. 444. *Bissell* vs. *Gold*, 1 Wend. 210. *Suydam* vs. *Wyckoff*, 13 Johns. Rep. 144. The first section of the act of 1818, (1 Comp. Stat. 611.) provides that each and every free, *able-bodied* white male citizen of this State, or any other of the United States, residing within this State, who is or shall be of the age of eighteen years, and under the age of forty five years," (with certain exceptions) " shall severally and respectively be subject to the requisitions of this act." If the plaintiff was not *able-bodied* within meaning of the Statute, he was not liable to be enrolled by the very terms of the act, and the defendant, Stockwell, had no more jurisdiction over him than he would have had, had the plaintiff been under the age of eighteen years. No lawyer certainly will controvert the position that an indi-

vidual is not liable to military duty who is under the age of eigh-
teen years or over forty-five.    The same principle must be ap-
plied to the case of one who is not *able-bodied.*    *Howe* vs. *Gre-*
*gory,* 1 Mass. Rep. 81.    *Commonwealth* vs. *Fitz,* 11 Mass.
Rep. 540.    *Pitts* vs. *Weston,* 2 Greenleaf's Rep. 349.

2. The evidence in relation to the warrant ought to have
been admitted and the warrant itself excluded.    A warrant is
the only legal evidence of the appointment of a sergeant—
it is the foundation of all his authority.    The 8th section of the
act of 1818(1 Comp. L. 614.) provides that " all non-commis-
sioned staff officers and sergeants shall receive warrants, under
the hand of the commanding officer of the respective regiments."
The authority to issue a warrant must be regarded as a personal
trust, and as implying, to some extent, the exercise of judgment
and discretion.    The commanding officer ought to enquire so
far as to ascertain that the appointment was regularly made.
This enquiry can never be made when the warrants are signed
in blank and filled up at the pleasure of the commanding officer
of a company.    But at all events, after a warrant has been once
filled up and delivered over, it cannot be re-called, as was done
with the case at bar, and filled up for, and delivered to some other
person, without the acquiescence of the person to whom it was
first delivered. (*Burt* vs. *Dimmock,* 11 Pick. 355.)

It is insisted that there was error in the direction the court
gave the jury—

1. When the plaintiff applied to the Colonel to remit the fine,
and after he had fixed upon a time and place for the hearing, of
which Stockwell was duly notified, Stockwell's authority to
issue an execution was entirely suspended, and his subsequent
proceedings void, and the jury should have been so instructed.
*Case* vs. *Shepherd,* 2 Johns Cas. 27. *Briggs* vs. *Wardwell,* 10
Mass. Rep. 356.    The 35th section of the act of 1818, it is
true, requires that the time fixed for hearing the application for
a remission of the fine, shall be within six days from the time
application is made to the officer for that purpose.    But the
statute in this particular is merely *directory.*    The *People* vs.
*Allen,* 6 Wend. 486.  *Pond* vs. *Negus & al.* 3 Mass. Rep.
230.  *Waters* vs. *Davies,* 4 Vermont Rep. 601.)

2. The arrest and imprisonment of the plaintiff, after he had
requested the defendants to levy the execution upon his property
in lieu of his body, was unauthorized and rendered them tres-

Washington,
  March,
  1836.

J. A. Warner
  vs
Stockwell &
Foster.
passers. It is only in those cases where personal property cannot be found that an officer is authorized to arrest the body of a debtor on execution. ( 1 Comp. L. 209. C. 28. Sec. 2. ) In the present case property was tendered before the arrest, and it was the duty of the defendants to take it, and the jury should have been so directed. *Hall* vs. *Hall*, 1 Root, 120. The defendants exceeded their authority. They acted arbitrarily and oppressively. The process was abused, and for this trespass lies. (1 Chitt. Plead. 169.)

*P. Dillingham, Jr. for defendants.*—1. Plaintiff offered to prove that when the penalty, for which the fine was assessed, was incurred, he was exempt from military duty, on account of some physical disability.

This was inadmissable from the following considerations.

1st. No question was made that Stockwell was the lawful commanding officer of the company within the limits of which the plaintiff lived.

2nd. Nor was it made a question that the plaintiff was a free white male citizen of this State, over 18 and under 45 years of age, and, *prima facie*, at least, able-bodied.

3d. It was not pretended that the plaintiff came within any of the exceptions mentioned in the militia act, so called. (Stat. 611.) Hence we contend that it was lawful for the commanding officer, in whose company, he lived to enroll him in said company, nay, it was his duty so to do, unless he found his name already on the roll (see 1st Sec. Militia act.) The plaintiff had no apparent or visible inability, and if in his organization bodily, there was any " *latent defect*" or invisible infirmity, yet for enrolling him, he cannot hold the commanding officer liable in this action.

The commanding officer of the company was bound to enquire as to plaintiff's liability to be enrolled. He had jurisdiction of the matter to be determined ; and having jurisdiction of the matter, however erroneous his decision, or malicious his motive, this action cannot be sustained. 1 Salk. 306. 2 T. R. 225. 5 ib. 186. 1 Ld. Raym 466. 6 T. R. 449. 3 M. & S. 325. On the questions of age and ability of body, the commanding officer acts judicially. (Stat. ch. 96. Sec. 1.) In all cases where a magistrate has a duty to perform, which devolves upon him any enquiry or determination, he then acts judicially. *Barnett vs. Peck,* 6 Vt. Rep. 456. *Wood* vs. *Peake*, 8 Johns. Rep. 69.

3 T. Rep. 38. 2 East. 244. *Mower* vs. *Allen & Bateman*, D. Chip. Rep. 381.

Washington,
March,
1836.

J. A. Warner
*vs.*
Stockwell &
Foster.

II. The time fixed by the field officer for hearing the plaintiff's application, was beyond the period when he had or could have any jurisdiction of the matter. The 35 Sec. ch. 96, Vt. Stat. giving the right to apply to a field officer, makes it imperative on him to set the time of hearing within six days ; with liberty, at the end of that time, to extend the time not exceeding six days more. If this section should be construed to be merely directory, the consequence would be, that the field officer might set the time one year as well as one month, in which time, the death or resignation of one of the officers would be likely to render all the proceedings void. Again, if the Statute be directory in this particular, as to the field officer's duty, then it is equally so as to the commanding officer's, and if he sees fit not to wait, but issues his execution, as in this case, he is not thereby a trespasser.

Applications in these cases, are not like appeals from an inferior to a superior jurisdiction, which vacate the judgment of the inferior court, but a mere stay of proceedings, that another person may remit the fine if he chooses. Even if an irregular appeal be taken, execution may issue. (*Loveland* vs. *Burton*, 2 Vt. Rep. 521.)

III. The offer to show an irregular warrant to the defendant Foster was clearly inadmissible.

If the sergeant, who serves the captain's notice or execution, has been appointed and sworn, that is sufficient, even without a warrant. " A corporal cannot object that the corporal who warned him, had not received his warrant, and therefore was not legally authorised to execute his order." (*Hyde* vs. *Melvin*, 2 Johns. Rep. 521.)

" No action lies against a magistrate, though he was not duly qualified to act." (3 B. & A. 266.) At any rate, this warrant was regular on its face, and could not be collaterally impeached, so as to make Foster, who had acted under it, a trespasser in this action.

IV. Is an officer, holding an execution, liable in an action of Trespass and false-imprisonment, for arresting the body of the debtor, when he is informed that the debtor has sufficient personal property, within his precinct, to satisfy the execution and charges ?

Washington,
March,
1836.

J. A. Warner
vs.
Stockwell &
Foster.

In *Bates* vs. *Carter*, 5 Vt. Rep. 608., and *Dow* vs. *Smith*, 6 Vt. Rep. 520., it is clearly settled, that the first sec. of No. 1. ch. 28. Vt. Statute, is entirely directory; and the reasoning of the court in the latter case, will apply with equal force to the 2d sec. of the same act. If it is not " to be endured that an officer must see a debtor in execution escape from the county, because the officer has not been to the debtor's house with the execution," then certainly it cannot be endured that he shall see him escape, because he has not searched through his precinct, to see if personal property may be found whereon to levy, and satisfy his execution.

In the above case of *Dow* vs. *Smith*, the court say,

" The only practicable course is to treat the officer's proceed- " ings as good, and if his disregard of this directory Statute is " without excuse, malicious, and productive of injury to the " debtor, let redress be had by an action on the case therefor " against him;" and such it may be truly said, " has been the practical construction of the 2d sec. of this Statute, ever since its adoption." If after an arrest made by the officer, he should refuse to receive personal property, when offered, he would not, for that, be liable in trespass and false-imprisonment. See 3 Com. Dig. 493.—where it is decided that false-imprisonment does not lie against an officer for refusing bail.

Should it be objected that more than legal costs were allowed and included in the execution, the case of *Johnson* vs. *Wilkinson*, 17 Johns. Rep. 145., is decisive of the point, that for *that* cause this action does not lie.

ROYCE, J.  Delivered the opinion of the court.

We, have to consider the several grounds taken by the plaintiff, in answer to the justification relied upon by the defendants.

He begins by insisting that he had a right to prove, in support of this action, his inability to perform military duty, in consequence of an internal injury received in childhood. The statute has imposed this duty upon " every free, able-bodied, white, male citizen of this State, or of any other of the United States, residing within this State, who is or shall be of the age of eighteen years, and under the age of forty-five years," with certain exceptions. It is assumed that all these qualifications must coexist, to subject an individual to military jurisdiction; that the question of jurisdiction is, from its nature, at all times, an open question; and consequently, that if, in fact, the plaintiff was not

an *able-bodied* citizen, the whole proceedings against him should be treated as void. In order to determine how far this conclusion should be admitted, some farther notice of the Statute becomes necessary. Having in these general terms designated those who are subject to the requisitions of the act, it directs that they shall be enrolled in the militia, by the captains or commanding officers of the respective companies, within whose bounds they shall reside. It is made the duty of such commanding officers to enroll every such citizen, including those, who, from time to time, shall come to reside within the bounds of their respective companies. And in all cases of doubt respecting the age of the party to be enrolled, he is required to prove his age to the satisfaction of the commanding officer. Notice of such enrollment is to be immediately given to the person enrolled, though a legal warning to attend a company, battallion, or regimental muster, or training, is allowed to operate as notice of enrollment. By the second section various officers of the United States, and of the State government, and persons in certain situations and employments, are excepted from the operation of the Statute; and all such are declared to be exempted from enrollment.

From all this it is evident, that the question of jurisdiction must relate to the time of enrollment, which is the first act and the basis of all subsequent proceedings. On this principle it has been adjudged, that in cases of express and permanent exemption from military duty, there was a want of jurisdiction over the party exempted, which rendered all proceedings against him void. *Wise* v. *Withers*, 3 Cra. 331.—*McLane* v. *Stuart*, reported in Swift's Evidence, 359. And it must be conceded, that if the first section of the act did not extend to the plaintiff, his case is quite as favorable, as if he had come within the exemptions of the second section. The statute, however, must receive a practicable construction. There are various disabilities arising from bodily infirmity. Some are visible and notorious, as the want of a foot, a hand, an eye, and the like, while others are not open to observation. Some are permanent, and others temporary. Now to the first class it is manifest that the statute was never intended to apply ; and therefore it may for the present purpose be admitted, that thus far the military jurisdiction should be denied. As to permanent infirmities of the other class, it is clear that if they render the party unable to

*Washington, March, 1836.*

*J. A. Warner v. Stockwell & Foster.*

Washington,
March,
1836.

J. A. Warner
v.
Stockwell &
Foster.

discharge the duties of a soldier, they ought fully to absolve him from those duties. But it does not follow, that such a person may not rightfully be enrolled. So long as his infirmity is invisible, and unknown to the commanding officer, it is the duty of the latter to enroll him. The statute can admit of no other sensible or just construction. And this is rendered still more evident, when we find that such a case is contemplated and provided for. It is enacted by the 8th section, that "no non-commissioned officer or private shall be disenrolled from the militia for disability, without a certificate from the regimental surgeon, or surgeon's mate, to the acceptance of the commissioned officers of their respective companies." Here is a provision for becoming disenrolled, which can be applicable to those only, who are laboring under permanent infirmity ; and no distinction is made between persons thus affected previous to enrollment, and those who afterwards become so. If the plaintiff was affected with the infirmity which he offered to prove, it was not apparent to others, nor had the defendant, Stockwell, any notice of it, until after the plaintiff had been enrolled and dealt with as one of the company. Therefore it cannot now avail him for the purpose of avoiding the enrollment *ab initio*, though it should furnish sufficient cause for a disenrollment. In the mean time the plaintiff became subject, like others of the company, to the military jurisdiction conferred by the statute. Cases are cited from Massachusetts, to show that evidence of the plaintiff's disability ought to have been received. But the extent of their application will readily appear, from a brief notice of the regulations adopted by that State on these subjects. They have a different course of proceeding for this kind of forfeitures, which to some may appear preferable to the summary and final process authorised by our law. The clerk of each company is there the proper officer to prosecute for fines of this description. And it appears by the cases to which we are referred, of *Howe* v. *Gregory*, 1 Mass. 81, and *Commonwealth* v. *Fitz*, 11 Mass. 540, that in such prosecution by the clerk, evidence of bodily infirmity is admissible, though the party may have neglected to make an excuse to his commanding officer, as the statute required, or may have made it unsuccessfully. The excuse would seem to be enjoined as a measure of mere prudence, to prevent the inconvenience of an unjust or groundless prosecution ; not as an appeal to any judicial authority. In this respect our system is

entirely different; it being settled by the case of *Mower* v. <span style="float:right">Washington, *March,* 1836.</span>
*Allen* and *Bateman,* 1 Chip. 381, that, in imposing and remit-
ting fines, militia officers act judicially, and that their final deci- <span style="float:right">J. A Warner</span>
sions are conclusive. In another view th cases cited are equally <span style="float:right">Stockwoll &</span>
inapplicable to the present. There t question arose in a di- <span style="float:right">Foster.</span>
rect prosecution for the penalty ; whereas it now arises in a dis-
tinct and collateral action. The evidence was correctly exclu-
ded.

The next question arises under the 35th section of the act,
which authorises the person amerced to apply to a field officer of
the regiment, for a discharge or remission of the fine. The
plaintiff made such an application. And it is urged that the
process for collecting the fine was legally suspended, so long as
the field officer saw fit to hold the subject under consideration.
This depends on the question, whether the statute, in this parti-
cular, is merely directory to the officer. The rule on this subject
is very clearly and correctly stated by MARCY, J. in *The People*
v. *Allen,* 6 Wend. 486. He says " that where a statute spe-
cifies the time, within which a public officer is to perform an
official act, regarding the rights and duties of others, it will be
considered as *directory* merely, unless the nature of the act to
be performed, or the language used by the legislature, shew that
the designation of the time was intended as a limitation of
the power of the officer." According to the test here given,
the question raised admits of no doubt. The statute allows the
delinquent six days, within which to make the application, after
being served with notice of the amercement. It then directs
that " the said field-officer shall thereupon notify the captain or
commanding officer of the company, to which such delinquent
belongs, of the time and place when he will hear the excuse of
such delinquent, which shall be within six days from the time
application shall be first made, and request the commanding offi-
cer to appear and show cause," &c.——" And the said field-
officer may, if he thinks proper, at the time of hearing said ex-
cuse, give further time for hearing the same, not exceeding six
days from the time first appointed ; and said field-officer may or
may not remit said fine, as the circumstances of the case may
require." The power thus vested in the field-officer is not
strictly an appellate power, since the right of issuing final pro-
cess in the case is not given him. If he thinks proper to remit
the fine, the proceedings are at an end.; but if not, execution

Washington,
  March,
    1836.

J. A. Warner
     v.
Stockwell &
Foster. issues from the commanding officer of the company, founded on the amercement, as made by him. It is more properly a power of check or restraint upon the latter officer, operating to stay proceedings pending before him, but not effectually to transfer them to another jurisdiction. The nature of the power, therefore, indicates that it should be temporary. If the field-officer has a general discretion to suspend proceedings of this kind, he may defeat the collection of a fine without ever remitting it. The result is, that did the question rest solely upon the former clause of the section, which says that the time for hearing the excuse shall be within six days after application made, we should feel constrained to say, that here was a limitation upon the power of the officer ; and consequently, that his appointment of a distant day for hearing the excuse, was wholly unauthorised. But the express negative words of the latter clause, place the matter beyond all dispute. No statute was ever construed to be merely directory, in opposition to its own direct negative terms. Here was, therefore, no restraint upon the defendant, Stockwell, when he issued the execution, and the same was legally issued.

An attempt was made on trial, to invalidate the warrant issued to the defendant, Foster, as sergeant. We think the evidence offered for that purpose was properly rejected. The practice of signing these warrants in blank, and authorising the captains to fill out and deliver them to the sergeants of their respective companies, we believe to be very general, if not universal. No evil is known to have ever resulted from it. In the case cited to this point of *Burt v. Dimmock,* 11 Pick. 355, the objection was, that the colonel had not even signed the warrant ; but that another person had signed it in his name, under a previous general licence to that effect. And if the defendant, Stockwell, had competent authority to fill and deliver out the warrant, the additional facts, offered to be shown, could be of no legal importance. This authority would imply the right of selecting the proper officer to receive the warrant. And though, by mistake, or otherwise, it might once have been delivered to another person, that fact could not impair its validity as a warrant to Foster, after it had been accepted and acted upon by him. Besides, we may well presume, in the absence of proof to the contrary, that in pursuance of the 8th section of the statute, this warrant had been duly recorded by the adjutant, as having issued to Foster.

But, admitting that the validity of the warrant is left in doubt, Washington
March,
1336.
we are not prepared to say, that the legality of the plaintiff's
commitment is thereby affected. It is a principle of extensive J. A.Warner
v.
Stockwell &
Foster.
application, that an official act, if regular and correct in the
manner of its performance, will be sustained by proof that the
person doing the act was an officer *de facto*. The rule is oth-
erwise in proceedings instituted for the purpose of directly try-
ing his right. The defendant, Foster, was at least a sergeant *de
facto*, having been duly elected and sworn. *Rex* v. *Lisle*, 2
Stra. 1091. And without deciding whether this would enable
him to act without a warrant in a matter strictly military, and
where, perhaps, the warrant might be his only ostensible authori-
ty for acting, we think he had authority sufficient for the act
complained of; or rather, that the act cannot be impeached for
want of authority. His immediate authority for making the
commitment was contained in the writ of execution, which in
its nature was rather a civil than a military process. And as,
in our opinion, the principle just stated would protect a consta-
ble or other civil officer in a like case, we see no good reason for
denying to Foster the benefit of the rule, at least in this branch
of his official duty.

The remaining objection is to the mode resorted to for enfor-
cing the execution. The plaintiff offered to prove that it might
have been satisfied by a levy on property, and without an arrest
or commitment of his person. According to the order of pro-
ceedings pointed out by the statute, directing the mode of levy-
ing executions, the officer is first to demand payment of the
debtor, or at the place of his abode, and then the right of arrest-
ing the person is postponed to that of seizing property. As to
the first step prescribed, it is well settled, that the statute is
merely *directory*. *Eastman* v. *Curtis*, 4 Vt. Rep. 616.—*Dow*
v. *Smith*, 6 Vt. Rep. 519. The other part of the enactment
affects the personal liberty of the debtor, and, for any wanton
violation of the right intended to be secured to him, he is cer-
tainly entitled to redress. But too strict a hand must not be
laid upon the officer. Whenever he takes property, unless spe-
cially directed by the creditor, he acts upon hazards against
which he has no indemnity. A liberal scope should be allowed
him for the exercise of honest judgment and discretion. If he
commits the debtor in disregard of his right, without any appa-
rent necessity for so doing, and from motives of oppression or

Washington,
*March,*
1836.

J. A Warner
*v.*
Stockwell &
Foster.
malice, he ought to be answerable for all damages, and not oth-erwise.    It would, therefore, seem that the debtor's remedy should be sought in a distinct action against the officer.    Indeed, the decisions, already made on the first requirement of the act, appear, in principle, to cover the ground now taken.    The court say, in *Dow* v. *Smith,* before cited, that " the only practicable course is, to treat the officer's proceedings as good ; and if his disregard of this directory statute is without excuse, malicious, and productive of injury to the debtor, let redress be had by an action on the case therefor against him."

There is another feature in this part of the case, which would go far to remove the objection taken, were it necessary to rely upon it.    The complaint is, that the officer should have levied on property.    But to entitle this complaint to consideration, it should appear that the debtor was ready to acquiesce in the ta-king of his property.    In this instance, however, the plaintiff did not intend to acquiesce ; but gave the defendants to under-stand that they would be visited with an action, for any attempt to enforce the execution.

On the whole, we consider that the justification was made out, and that the judgment below must be affirmed.

Judgment of County Court affirmed.