## MOYNAHAN *v.* THE PEOPLE.

1.  The statute of variances and amendments does not extend to indictments for crimes, and the misnomer of third persons necessarily mentioned in an indictment is fatal.

2.  An indictment for the murder of Patrick Fitz Patrick, where the true name is Patrick Fitzpatrick, held fatally defective.

### *Error to District Court of Fremont County.*

AT the November term, 1876, of the district court, Moynahan, the plaintiff in error, was indicted for the murder of Patrick Fitz Patrick, tried and convicted.  It appeared upon the trial that the name of the deceased was Patrick Fitzpatrick.  The court instructed the jury upon the question of the name that " the jury must also believe from the evidence that the name of the deceased alleged in the indictment to have been killed, was Patrick Fitzpatrick, in order to find the defendant guilty."

The second and third instructions were as follows :

" 2. If the jury believed from the evidence that the defendant killed the deceased, in the manner described in the indictment, animated and prompted so to do by the impulse of revenge and not irresistible passion, and that previous to the act of killing (and it is immaterial how short the time, even a minute being sufficient) if the defendant formed a

deliberate intention to take the life of the deceased, then the court instructs the jury that the killing under such circumstances would be in law deliberate, premeditated murder, and you should in such case indicate in your verdict, whether the killing was done with deliberation or premeditation."

" 3. Manslaughter is the unlawful killing of a human being without malice either express or implied, and without any mixture of deliberation whatever, it must be voluntary, upon a sudden heat of passion, caused upon a provocation apparently sufficient to make the passion irresistible. The killing must be the result of that sudden, violent impulse of passion supposed to be irresistible, for if there should appear to have been an interval between the assault or provocation given and the killing, sufficient for the voice of reason and humanity to be heard, the killing shall be attributed to deliberate revenge and deemed murder."

Messrs. SMITH & MACON, for plaintiff in error.

A. J. SAMPSON, Attorney-General, for defendants in error.

WELLS, J. In the indictment upon which the plaintiff in error was arraigned, the deceased, where first mentioned, is designated as Patrick Fitz Patrick ; the three words composing the name being written separately, and each with a capital initial. In the two succeeding allegations in which the injured person is mentioned he is described as "the said Patrick Fitzpatrick"; the syllables composing the name being divided into two words only. In all the allegations which follow, he is described as in the first instance.

Assuming for the present that the differences which have been noticed in the orthography of the name are to be regarded ; that the indictment, therefore, is to be understood as designating the deceased person variously, the question first presented is, by which of these variant descriptions is the prosecutor concluded ? Upon one or the other it is supposed he is bound to stand ; for certainly it would be

an unprecedented departure from the precision which has been regarded as requisite in criminal accusations, to support a conviction of felonious homicide of one person charged, as ensuing the assaulting and wounding of another.

The case of *Commonwealth* v. *Hunt*, 4 Pick. 252, is somewhat analogous to the present. The indictment charged that the defendant, in and upon one Peddy Harvey, did make an assault, and her the said Peddy *Hunt*, did beat, wound and ill-treat, with intent, her, the said Peddy Harvey, to ravish and carnally know; and for this repugnancy objection was taken. But the court were of opinion that the whole clause containing the misnomer was surplusage, and might be rejected without impairing the residue.

In *Greeson* v. *The State*, 5 How. (Miss.) 42, indictment for robbery,—the assault and putting in fear was charged as done upon the person of Richard Gaines, and certain money obtained by the robbery was described as the property of the said Richard Gaines ; in a subsequent recitation it was referred to as "of the property of the said *Robert* Gaines."

On error, the latter recital was rejected as surplusage, and the conviction had below was affirmed.

In *Rex* v. *Morris*, 1 Leach (4th Ed.), 109 ; 1 Bish. Cr. Pro., § 481, the indictment contained an averment as follows: "that Francis Morris, the goods and chattels above mentioned so as aforesaid feloniously stolen, taken, etc., feloniously did receive and have, he the said Thomas Morris, well knowing the said goods and chattels to have been feloniously stolen, etc." It was objected that the only person to whom the indictment imputed the guilty knowledge requisite to make the receiving criminal was another than the receiver ; and therefore the indictment could not be supported. But, held that without the words "*the said Thomas Morris*," the indictment would be sensible and sufficient; and that, therefore, the misnomer should not vitiate what was otherwise certain.

In the *State* v. *Hand*, 1 Eng. (Ark.) 165, the indictment described the defendant, where first mentioned, as "Haw-

kins —— late of, etc.;" wherever mentioned subsequently he was described as "the said Hawkins Hand." Plea in abatement, that his name was "Hawkins Hand," and not Hawkins, and demurrer thereon. The court were of opinion that the relative 'said' accompanying the full name where first shown, must be understood to refer to the name Hawkins, previously given, and that the reference could neither add to, nor diminish the antecedent allegation. It was therefore concluded that if any one was presented, it was "Hawkins," and not Hawkins Hand; the demurrer was accordingly overruled.

These cases countenance the propriety of applying the maxims against surplusage, and false demonstration to criminal indictments; and establish the proposition, that when the name of the accused, or injured person, is given variantly, in different parts of the indictment, the first allegation shall control; and the variant allegation appearing subsequently, shall be rejected, if thereby repugnancy is avoided, and the indictment made sensible.

In the present case the deceased person having been once described by a full christian and surname, it would have sufficed to refer to him afterward by the christian name only. *State* v. *Pike*, 65 Me. 118. The surname, Fitzpatrick, therefore, which, according to the hypothesis, varies from the name previously given, may everywhere be rejected, and the indictment read as if in those places, it had mentioned the defendant as "the said Patrick," only. According to this interpretation, the indictment everywhere describes the deceased person as Patrick Fitz Patrick.

But the evidence sufficiently indicates that the surname of the deceased was Fitzpatrick; and the question next presented is, whether the name so proven is fatally variant from that ascribed to the deceased in the indictment.

To enlarge upon the propriety and humanity of requiring the officer charged with the pleas of the people to distinctly inform the accused of the name of the person whose private injury mingles with the public offense would be but a waste

of words. It is sufficient to say the law requires it. Those cases where the name is unknown, or the person injured is an unchristened infant, are, it is believed, the only exceptions to the rule ; and in these cases, the fact which excuses the averment of the name must be both alleged and proven.

In all civilized communities, for many centuries past, at least, it has been found necessary to the convenient identification of individuals, that every person should bear both a family or surname, and a name of baptism. Even in ordinary discourse, no one would venture to designate a third person by the christian or surname alone, unless of the same family with the speaker or person addressed, or an intimate friend of one or the other.

The same reasons which seem to have dictated the common form of appellation apply with greater force in the case of a criminal accusation. The indictment ought, therefore, to set forth both the christian and surname; and while neither the grand jury nor the prosecuting officer are bound to observe the proper orthography, it seems very manifest that the christian and surname must be so inscribed in the indictment, that by inspection they may conveniently be distinguished. To dispense with this measure of precision is in effect to dispense altogether with alleging the name of the injured person, as may easily be illustrated.

In the *State* v. *Kean*, 10 N. H. 351, McKusic was held properly written with the abbreviation Mc. The conclusion probably would have been the same if the prefix had assumed the other abbreviated form, of the capital followed by the apostrophe. In either case the abbreviation indicates a prefix merely, and must be taken as part of the name which follows. But if, instead of the abbreviation, the word had been written at length, and in a form in which as a surname it is frequently found, and separated by a considerable space from the residue of the name, we think it must have been regarded as constituting a part of the christian name. So if the capital M alone had been used, followed by a period, and separated as before supposed, it must have been taken to be the abbreviation of some middle name, and

not as a prefix to the surname. There are many surnames in common use, in some instances also bestowed as a part of the christian name, in respect to which a departure from the canon requiring christian and surnames to be distinguished, will inevitably occasion confusion and variance.

Suppose the indictment to charge larceny of the goods of John King Mann, when in truth the name of the owner is John Kingman, or an assault upon William Green Field, or Henry Young Blood, where the surname of the injured person is, in fact, Greenfield or Youngblood; no one would for a moment suppose that a conviction upon such averment and such proof could be supplied.

The surname of the deceased, as proven at the trial, is of similar formation with some of those which I have instanced. The first syllable was originally, it is believed, a mere prefix, the paternal name retaining independent form, and conveying a distinct idea. At the present day, however, the two are invariably written, pronounced and accepted as one name. I am unable, at least, to find in the voluminous tables of cases which accompany the digests of the reports of this country, nor in any of the gazetteers, directories, or tables of names, which are accessible to me, any instance where they are written as the name of the deceased person is written in this indictment. Moreover, what here appears to be written as the middle name is occasionally found as a christian name. It has also attained to the dignity of a surname, and, with a various orthography, is borne by a family which appears to be widely disseminated, as, if necessary, may be established by reference to the judicial reports. *Commonwealth* v. *Fitz*, 11 Mass. 540; *Brown* v. *Fitz*, 13 N. H. 283; *Alden* v. *Fitts*, 12 Shep. 238; *Fitts* v. *Cook*, 5 Cush. 596; *Boston* v. *Fitz*, 4 id. 365; *Kendall* v. *Fittz*, 2 Foster; *Fitts* v. *Fitts*, 14 Texas, 443; *Harwell* v. *Fitts*, 20 Ga. 723; *Fitts* v. *Brown*, 20 N. H. 393; *Little* v. *Fitts*, 33 Ala. 343; *Fitts* v. *Whitney*, 32 Vt. 589; *Moore* v. *Fitz*, 15 Ind. 43; *Robbins* v. *Fitz*, 33 N. Y. 420; *Fitz* v. *Minnesota, etc., R. R. Co.*, 11 Minn. 414; *Fitz* v. *Reichard*, 20 La. Ann. 549; *Fitts*

v. *Davis*, 42 Ill. 391; *Fitts* v. *Morse*, 103 Mass. 164. The name which follows is also a well-known family name. The matter stands therefore in this wise : According to the orthographical usages of the language, the deceased person is in this indictment awarded three names, the surname being Patrick. The only other surname which the prisoner from inspection of the indictment could possibly conjecture to be intended, is that proven at the trial ; and that surname is by the common and perhaps invariable usage written without any such division of syllables as here exhibited. What is here set down as the middle name, or part of the christian name, is in common use both in this character and as a surname. The fashion prevails in our generation to perpetuate the family name of the mother in that of the son.

All these considerations conspire to dissipate whatever effect might by suspicion be attributed to the repugnant designation before mentioned. To the mind of an indifferent person, familiar with the orthography of proper names in our language, and uninformed in the name of the person where death is alleged, this indictment would, therefore, it seems to me, have appeared to charge the felonious homicide of a person bearing the christian name of Patrick Fitz, and the surname of Patrick.

It follows, therefore, that the indictment failed of its office. It afforded the prisoner no information as to the person with whose death he is charged. If the result had been favorable to him he could not have availed himself of this record to bar another indictment, without producing evidence *aliunde* to identify the person named as the murdered man, in the new indictment, with the person who appears in that character in the present one ; a burden, which neither the grand jury, nor the prosecutor, nor the courts have any power to impose.

It will not suffice to say that the prisoner has not been misled. In the resent state of the law we are not permitted to say this. It is presumed that every accused

person is both innocent and ignorant of the offense alleged in all its substance and detail ; and, therefore, it is that the law requires a specific charge of the whole matter, with all its particulars.   It will be time to excuse the misnomer of third persons necessarily mentioned, when the legislature shall have extended the statute of amendments and variances to criminal indictments.   The plaintiff in error has been convicted of the murder of one person upon evidence which relates altogether to another.

That portion of the charge to the jury which relates to this question was, therefore, erroneous.

In the residue, I am not able to discover error.   The first and third instructions are based upon the statute, and conform to it.   The second, in so far as it requires the jury to find premeditation, if the specific intent to kill existed at the time of giving the fatal wound, is entirely justified by the case of *Hill* v. *The People*, 1 Col. 436.

If by possibility the jury could have been misled by the generality of this part of the charge as to the essentials of manslaughter, the third instruction, following it immediately with a correct statement of the law, must have removed the false impression.

Judgment reversed and cause remanded.

*Reversed.*