No. 138.—Lewis. P. Harwell and another, plaintiffs in error, vs. John B. Fitts, for the use, &c. defendant

[1.] The recital of the payment of the consideration money in a deed, does not fall within the rule by which the party is estopped to deny it.

[2.] A creditor who has obtained judgment against his debtor, and levied his execution upon property mortgaged to other persons anterior to his judgment, and which mortgages were not foreclosed at the date of the levy, can only sell the property subject to the mortgage lien, or what is usually called the equity of redemption of the debtor, unless the mortgagee previously agrees to abandon his lien and suffer the entire interest in the property to be sold, coming in for distribution of the proceeds; and therefore, such creditor, and not the mortgagee, is entitled to the proceeds of the sale under such execution.

Case, &c. in Putnam Superior Court.    Tried before Judge Hardeman, September Term, 1856.

This was an action brought by John B. Fitts, as Sheriff, for the use of sundry plaintiffs in *fi. fas.* against one W. G. Lee, for the recovery of the purchase money of certain negroes sold as the property of defendant in *fi. fa.*    It appeared that the negroes were mortgaged to Harwell & Callaway. These mortgages were foreclosed prior to the sale.    The negroes were sold under general judgments, and at the sale Harwell & Callaway gave notice to the bidders of their mortgages.    They bought the negroes for $1.500.    In settling with the Sheriff, they deducted the amount of their mortgage debts, and paid him the balance of the bid in cash, and he

gave them a bill of sale, acknowledging the receipt of the purchase money.

Counsel for Harwell & Callaway requested the Court to charge—

1st. "That if the Jury believed the plaintiffs executed the bill of sale, he cannot now deny the receipts of the money."

2d. "That if the mortgage was foreclosed before the day of sale, the purchase by defendants, of the negroes, did not extinguish the debt, but the mortgagees have the right to look to the fund arising from the sale for payment of their debts."

The Court refused so to charge, and error is assigned thereon.

NISBET; ADAMS & DAVIS, for plaintiffs.

WINGFIELD; HUDSON, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] Was the Court right in refusing to charge the Jury, upon the proof in this case, that if they believed the plaintiff executed the bill of sale to the defendants, acknowledging upon its face the receipt of the purchase money from them, he is estopped from denying it?

Whether the recital in a deed of conveyance of the payment of the consideration money falls within the rule by which the party is estopped to deny it, or belongs to the exceptions, and is, therefore, open to opposing or explanatory proof, is a vexed question in the books. The English Courts have inclined to regard such recitals as conclusive evidence of payment, and binding the parties by estoppel; yet, in one of the earliest cases reported, *Rowntree vs. Jacob,* (2 *Taunton,* 141,) Chief Justice *Mansfield* said: "I still have great doubts on my mind which, perhaps, has been biassed by my practice in Courts of Equity." "My brothers," continued

his Lordship, "are all of opinion that a verdict could not stand, if obtained against the evidence of that deed, and the receipt indorsed on the back of it for the money; and consequently, the verdict already found, according to the legal operation of those instruments, must be supported."

And this decision, thus grudgingly made, is the authority upon which the case of *Sampson vs. Corke,* (5 *Bain & Alder.* 606,) was adjudged, and the two together are cited as precedents in support of the next case of *Baker vs. Dewy,* (1 *Barn. & Cress.* 704,) and so on.

We think we may safely assume, that while the weight of authority is in favor of the doctrine in England, still, there was no such settled rule, even there, as to this point, at the time of our Revolution, as to make it of binding obligation upon the Courts of this State.

The American States have, with overwhelming concurrence, treated the recital of the payment of the purchase money like the mention of the date of the deed, the quantity of land and other matters incidental and collateral to the principal thing, and which may be supposed not to have received the deliberate attention of the parties; and consequently, while the grantor is estopped from denying the conveyance, yet, the recital is considered, *at most,* but *prima facie* evidence only of payment in an action of assumpsit to recover the price which is yet unpaid. And in some of the Courts it is not even deemed sufficient to cast the *onus* upon the grantor. I will refer to a few of the leading cases. In Massachusetts, (*Wilkinson vs. Scott,* 17 *Mass. R.* 249; *Clapp vs. Terrell,* 20 *Pick.* 247; *Livermore vs. Aldrich,* 5 *Cush.* 431.) In Maine, (*Schilenger vs. McCann,* 6 *Greenlf.* 364; *Tyler vs. Carlton,* 7 *Greenlf.* 175; *Emmons vs. Littlefield,* 1 *Shepl.* 233; *Burbank vs. Gould,* 3 *Shepl.* 118.) In Vermont, *Beach vs. Packard,* (10 *Vermt.* 96.) In New Hampshire, (*Morse vs. Shattuck,* 4 *New Hamp.* 229; *Pritchard vs. Brown, Id.* 397.) In Connecticut, *Belden vs. Seymou,r* (8 *Conn.* 304.) In New York, (*Shepherd vs. Little,* 14 *Johns.* 210; *Bowen vs. Bell,* 20 *Johns.* 388; *Whitbeck vs. Whit-*

beck, 9 Cowen, 266 ; McCrea vs. Pumont, 16 Wend. 460.)
In Pennsylvania, (Weigley vs. Weir, 7 Serg. & Rawl. 311;
Watson vs. Blaine, 12 Serg. & Raw. 131 ; Jack vs. Dough-
erty, 3 Watts. 151.) In Maryland, (Higdon vs. Thomas, 1
Har. & Gill. 139 ; Singar vs. Henderson, 1 Bland. ch. 239,
269.) In Virginia, (Lewal vs. Bibb, 4 Hen. & Mur. 113 ;
Harvey vs. Alexander, 1 Randolph, 219.) In South Caroli-
na, Curry vs. Lyles, 2 Hill 404 ; Garret vs. Stuart, 1 Mc-
Cord, 514.) In Alabama, Mead vs. Steger, (5 Porter, 498.
507.) In Tennessee, Jones vs. Ward, (10 Yerger, 160, 166.)
In Kentucky, (Hutchinson vs. Sinclair, 7 Monroe, 291, 293;
Gully vs. Grubbs, 1 J. J. Marshall, 389.) In North Caro-
lina, they seem still to hold that a receipt under the seal of
the party, and not open to explanation in a Court of Law.
(Brockett vs. Foscue, 1 Hawks. 64 ; Spiers vs. Clay, 4
Hawks. 22, and Jones vs. Lasser, 1 Dev. & Batt. 452.)

But all the cases, English and American, concede that the
remedy in Equity is ample. Will it be insisted that at this
day, Anno Domini 1856, a party will be compelled to resort
to Chancery for this purpose merely ? And with a full
knowledge of the known and universal practice and under-
standing among our people upon this subject, would the
Courts of Justice tolerate, for a moment, the idea that such
formal acknowledgments, which are a mere ceremony, can-
not be rebutted ? For myself, I do not believe that they
should be held as a presumption even of payment against the
seller. It is well established that you may explain a receipt
for money; and why not the receipt of money confessed in a
deed ?

Settle such a principle and look at the consequence.
Where cash is not paid, notes of hand are most usually given
for land ; but they are of no higher nature than verbal pro-
mises, and are classed among parol contracts. If the deed
expresses that the consideration was paid in hand, would it
not prevent such notes from being recoverable ? Certainly,
upon the doctrine contended for. The defendant, by show-
ing that they were given for the land or other property con-

veyed, and by showing that the consideration was confessed to be paid by the deed, would necessarily defeat a recovery by the higher proof arising from the deed! For one, I am unwilling to go back to the black broth and iron currency of Sparta.

But the defendants were not entitled to the charge requested, for another reason. Richard F. Davis testified, that he was present at the settlement when the proceeds of the sale were paid out by the Sheriff on the evening of the day of sale, and that the defendants only paid to the Sheriff the difference between the amount of the purchase money and the aggregate sum due upon their mortgages. No objection was made to this parol proof at the time it was offered, and no motion made to withdraw it from the Jury. We respectfully submit, that under these circumstances, it was not competent for the Court to defeat the plaintiff's right of recovery, by instructing the Jury as asked; that that could not be done which had actually been done, without objection on the part of the defendants.

There is still a broader ground upon which to justify the refusal by Judge HARDEMAN to give the charge. The testimony shows that the Sheriff considered the purchase money as paid, and that he settled with the defendants for the amount of their mortgage *fi. fas.* and that the action is substantially brought; and if it is deficient in form, it can be amended at any stage of the proceeding to recover this fund back as having been wrongfully expended or paid by mistake. If the mortgage executions were not entitled to the proceeds of the property, can the defendants, *ex equo et beno,* retain it? In the judgment of this Court, the doctrine of seals and estoppels has nothing to do with the real facts and merits of this case.

[2.] The other charge requested was, that if the Jury believed that the mortgage to defendants was foreclosed before the day of sale, then the purchase by the defendants of the mortgage property, did not extinguish the mortgage debt; but the mortgagees have the right to look to the fund arising

from the sale of the mortgage property, for the payment of their debt.

Was the Court right in refusing to give this charge?

One of the mortgages seems to have been foreclosed on the 25th day of May, 1854, and the other, on the 6th of June, 1854, the day of the sale. It is in proof that notice was given, on the day of sale, of the mortgage liens upon the property by Lewis P. Harwell, for himself and Callaway; and that persons who attended the sale for the purpose of bidding for the negroes, were prevented from doing so on account of this notice. Shall the mortgagees, under such circumstances, be permitted to abandon their lien on the property and look to the proceeds, they themselves having become the purchasers? To do so would be to enable them to perpetrate a fraud in fact, to the prejudice of the defendant and other creditors. Such a course cannot receive the sanction of a Court of Justice.

We have been entertained and instructed by an argument submitted by our brother Adams, replete with ingenuity and research, and the object of which is to demonstrate, that under our law of mortgage, there is no such thing as the equity of redemption; and that therefore, no such thing can be seized and sold. Admit this for the purposes of this decision, and what then? Harwell and Callaway have mortgage liens on the negroes of William G. Lee. Common Law judgments are obtained against Mr. Lee of a junior date; the property is levied on and sold. How? Subject, of course, to the prior mortgage incumbrance. And denominate the interest or thing sold the equity of redemption, or by any other name, the legal result and effects are precisely the same. If a stranger or third person buys, he is obliged to extinguish the mortgage incumbrance before he can get a good title. And if the mortgagees themselves purchase, the same consequence follows by operation of law. At any rate, they have no lien on the fund thus raised, especially when, by proclamation, they announced to by-standers that they should assert their lien on the property itself, wheresoever and in whosoever

hands they might find it, and re-sell it. Here was record notice and express notice. In this case, the negroes being sold subject to the mortgages, we are bound to presume that the price at which they were knocked off, was their value only, above and beyond the sum for which they were mortgaged; and if Harwell and Callaway are permitted to retain the sum thus obtained, it must be at the manifest wrong and injury of the Common Law creditors.

But it is argued, that the mortgages having been foreclosed on or before the day of sale, the *corpus* of the property, and not the equity of redemption merely, was sold. Such is not not our understanding of the law. Adjudications have been made in Georgia, and are cited in the volume of the Superior Court decisions for 1842–'3, to sustain the position of the plaintiff in error. Unless, however, the foreclosure preceded the levy of the Common Law *fi. fas.* we believe there has been great unanimity of construction the other way. The sale must correspond with the levy. And if, at the time of the levy, the mortgage is not foreclosed, the equity of redemption is all that could be seized and sold by the Sheriff. And this view of the matter is sufficient to control the present case.

It must be remembered, however, that the mortgage lien, as recognized by Statute, is to be enforced in a specific way.

It is very questionable whether the Act of 1810, (*Prince*, 435,) to point out a regular and definitive rule for the payment of judgments, was ever intended to oust an older judgment lien on property sold by a younger, and compel it to look to the money; still, the cotemporaneous interpretation was, that it was designed—and we think it a good one; yet, we believe the Act of 1810 has never been held to extend to mortgage executions.

If the mortgagee previously agrees to abandon his lien and suffer the entire interest in the property to be sold, coming in for distribution of the proceeds, there could be no objection; and in that case, he would be paid according to the

date of his mortgage. Here, however, the opposite policy was pursued. The slaves were sold subject to the mortgage; and consequently, the amount which they brought is the excess value above the mortgages. None of the rights of the mortgagee were touched; he stands just where he did, except that by becoming the purchaser himself of the equity of redemption, the whole estate is united, *ipso facto*, in him.

For these and other reasons which might be assigned, we think the Court was justified in refusing the last charge as requested.