KATE B. KERR, by next friend, *et al.*, plaintiffs in error, *vs.* FRANK M. WHITE, executor, *et al.*, defendants in error.

1. An executor to a will made and probated in Tennessee may assent to a devise of real estate situated in this state, without probate of the will here. Whether, if there were creditors here, this would be good against them? *Quære.*

2. Where a will made in Tennessee, and executed according to the laws of Georgia, devised lands situated in this state to A B, in trust for the testator's children, the trustee takes a title to the land under our law, clothed with the trust for the beneficiaries, and the laws of Tennessee, prescribing on what terms the trustee shall enter upon the execution of the trust, have no application.

3. The injunction in this case was properly refused.

Administrators and executors. Trusts. Wills. Injunction. Before Judge GIBSON. Richmond county. At chambers. April 28th, 1874.

Kate B. Kerr and John L. Kerr, minors, by their legal guardian under the laws of Tennessee, and by their next friend in Georgia, filed their bill against Frank M. White, as executor of the will of John Kerr, deceased, and Thomas W. White, as trustee for complainants, alleging, in substance, the following facts:

John Kerr died in Memphis, Tennessee, in September, 1870, leaving a will, the fifth item of which was as follows:

"I give and bequeath to Thomas W. White all the rest and residue of my property, both real and personal, including houses and lots, lands, bonds, notes and stocks of every kind and description, in Georgia, Tennessee and Mississippi, or elsewhere, *in trust*, for the benefit of my three grand-children, John L. Kerr, Kate B. Kerr, and Julia Willie Kerr, with full power and authority to sell any portion of the same and

Kerr *et al. vs.* White *et al.*

reinvest in such other property as he may think best; to expend such amounts as may be necessary to educate them well, and on the coming of age or marrying of my grand-son, to pay him over and deliver to him one-third of the same; and on the marriage or coming of age of the girls, to deliver one-half of their interest to them, and to settle on them for life, with remainder to their heirs, in strict settlement, the other half; but should either of them die before coming of age or marrying, his or her share to go equally to the other two, with the same limitations as to the girls."

Julia Willie Kerr has since died.

At his death, testator possessed, in Georgia, two valuable lots in Augusta, at the southwest corner of Jackson and Broad streets, thirty-eight shares of stock in the Atlanta and West Point Railroad Company, and an interest in sixty shares of stock in the Georgia Railroad and Banking Company, standing in the name of Kerrs & Hope, a firm of which John Kerr had been a member with Andrew Kerr and James Hope, of whom James Hope is the survivor, and is now a resident of Augusta, Georgia. Frank M. White has collected the income from the property in Georgia, except the dividends on the Georgia Railroad stock, which have been collected by James Hope since the death of John Kerr.

The following proceedings were had in Tennessee: A bill was filed early in 1872 to compel Thomas W. White to pay educational bills, and to give bond for his trust. During the fall of 1872 a decision was rendered requiring him to give bond for property in Tennessee, and not to give bond for property out of that state. Both parties appealed, and it is now in the supreme court of Tennessee. A bill was also filed to compel the trustee to pay past educational bills, and allow annually a sum for maintenance, support and education, of the infants, and to pay bills due for past maintenance of complainants. In July, 1873, an order was passed, *pendente lite,* for support and maintenance, but not for education; and a final decision for annual allowance for support and education was rendered March 27th, 1874, amounting to $3,000 00, with direction

to pay back bills due for past maintenance. In January, 1874, a bill for injunction was filed in the probate court to restrain White from acting as trustee until he gave bond for his trust, and for his removal if he failed to give bond; also, for a receiver. Injunction was issued and served in January, 1874, upon Thomas W. White and Frank M. White. The demurrer of defendant, Thomas W. White, to the jurisdiction of the court had not been argued up to the hearing in this case.

The following proceedings were had in Tunica county, Mississippi: In the chancery court, having probate jurisdiction, an order was passed, in 1871, for maintenance and support, to be furnished out of the Tunica estate (not the trust estate) of the minors, inherited from their father. An order, in 1872 or 1873, was passed increasing the allowance. In the fall of 1873, Mrs. Julia G. Coffee, mother of infants, was appointed guardian *vice* Dr. Nelson, resigned. In the fall of 1873, an order was passed discontinuing the allowance from Tunica court, because the estate was out of repair, and there being no net income from it. The full sum allowed by that court for maintenance and support of infants was not received in any year; and in April, 1873, the amount received under such order had fallen short, from year to year, to about eighteen hundred or two thousand dollars. The bill against White, trustee, for maintenance and support, was not filed until long after the infants had failed to receive anything from their Tunica allowance, and was only brought because White, trustee, refused to make any such allowance out of the trust estate, denying his authority to do so, notwithstanding the allowance failing from Tunica court, of which he (White) had knowledge.

The following proceedings were had in Georgia: A petition for administration, with the will annexed, was filed in Georgia January 22d, 1874, to which objections were filed by Thomas W. White, trustee, and Frank M. White, executor, and the same are on appeal, undetermined, in Richmond superior court. On the 16th February, 1874, Frank M. White

Kerr *et al. vs.* White *et al.*

delivered to Thomas W. White, trustee, in Tennessee, a deed of transfer of the real estate in Georgia, but made no reference to the Georgia or Atlanta and West Point Railroad stock. This was done after he had notice of an application plication for administration in Georgia.

All the debts in Tennessee have been paid except one claim of about $3,000 00. No settlement has been had with James Hope, who retains control of the Georgia Railroad stock, and claims a large indebtedness as due him by testator on a settlement of the partnership affairs. The defendant, Thomas W. White, trustee, is now attempting to sell the real estate located in Georgia. He also fails to maintain and educate complainants. They pray that the said Frank M. White, executor, be enjoined from paying or delivering to the said Thomas M. White, trustee, any portion of the balance of their estate in Georgia until the further order of the court, and that said trustee be restrained from receiving the same.

That the said Thomas W. White be enjoined from acting further in the capacity of trustee, or from receiving any of the income of the property now in his hands, or from disposing of any portion thereof, but that a receiver may be appointed to take charge of said property, and to collect its income until the further order of the court; that if it be held that said White is entitled to act as trustee, that such receiver be nevertheless appointed to act until he give a proper bond for the protection of the trust estate.

That upon a final hearing the said White may be enjoined from acting further as trustee. If not, that he may be decreed to execute the trusts covered by the will by paying the tuition bills and expenses of the education of the complainants already accrued, or which may hereafter accrue. That he be required to give bond, etc.

Thomas W. White answered, denying the jurisdiction of the court of Tennessee over him, or its authority to require security, asserting his right to control the property in Georgia under the authority of the will; denying the necessity for administration, and alleging proper provision for the minors.

Numerous affidavits were read upon the hearing of the motion for injunction and the appointment of a receiver, all unnecessary here.

The injunction was refused and a temporary receiver appointed to act until the supreme court could pass upon the questions involved. To this judgment the complainants excepted.

FRANK H. MILLER, for plaintiffs in error.

1st. A foreign executor is authorized to sue in Georgia: Act of February 23, 1850, 280; Cobb's Digest, 341, on cause of action before or after death of testator; Act December 6, 1860, 32; Code, 2450, 2614; and make titles to land where bond has been given by deceased: 30 Ga., 652; or sell, on application to court of ordinary, any land recovered by suit: Code, section 2617. He may also have fraudulent letters of administration in Georgia set aside: 37 Ga., 265; and is not required to account in Georgia if solvent and under bond: 34 Ga., 511; but he may be required to protect the interest of citizens of Georgia: Code, 2616; and his authority ceases whenever a Georgia administrator or executor is appointed: 4 Lansing, N. Y., 188 and 189. Prior to express statutes he could not sue in Georgia, although he could receive payment there: 9 Wal., 394, 740; and a new administration was necessary: 4 Mason, 16; 10 Paige's Chan., 550; 6 John Chan., 353. Now he can use all the processes as if qualified in this state: Code, 2450. But there is not, and never was, any law which authorizes suit *against* him: 5 Ga., 275; 24 Ga., 370; 15 Pet., 1; nor against a foreign trustee: 32 Ga., 358; 38 Ga., 90.

2d. The complainants have the right to ask the direction of the court whether the real estate in Georgia is to be distributed according to Georgia or Tennessee law: 18 Ga., 554-8; and to pray for their protection: 28 Ga., 32; although they are domiciled under the law of Tennessee: 33 Ga., 195; and a transcript of the will is a muniment of title under which they can claim to have their rights passed upon: 31 Ga., 593.

3d. Disposition of real estate, by deed or will, is subject to the laws of the country where situated, and the will must be proved: 9 Wheaton, 565, 571.

4th. In removing trustees, the controlling principle with the court is the scope and object of the trust: 14 Ga., 416; 16 Ga., 406; 26 Ga., 644. And the court determines whether the allegations are sufficient: 32 Ga., 31, 696; 33 Ga., 435. The following sections of the Tennessee Code, viz: Sections 1974, 1975, 1979, 1980, 2222, 2225, 3648, 3649, 3655, 3656, 3660, 3661, 3662, are in evidence, and the decision of the court construing them. This construction of the Tennessee law, as well as that determining what the will means, is the law of this case for the present at least: 38 Ga., 75.

5th. Where there is a contest as to administration, there is a necessity for the appointment of a receiver: Code, 3149. Where there are unsettled matters of a partnership, administration is necessary: Code, 1907. And where the foreign executor fails or refuses to collect the assets in Georgia: Code, 2535-6; 8 Ga., 236-9; 10 Ga., 266; McLaren *vs.* Bradford, decided Sept. 15, 1874.

6th. Whether there shall be an ancilliary administration in Georgia, and whether assets in Georgia, arising from real estate are to be remitted to Tennessee, is a question of judicial discretion: 20 New York, 103; 53 *Ibid.*, 192; 18 Ga., 559.

W. H. HULL; BARNES & CUMMING, for defendants.

1st. Who may appoint a trustee, and who may act as trustee in Georgia? We answer whoever has property in Georgia, and a right to convey it, may convey it, *in trust,* by deed or will; and whoever is capable of holding property in Georgia for his own use, may hold it in trust: Hill on Trustees, p. 55-59. But citizens of other states may both hold and convey property in Georgia. An appointment of a trustee by a foreign court would stand on a different footing.

2d. A foreign executor can make a valid deed to land in Georgia: 30 Ga., 651; Criswell *vs.* Altemus, 7 Watts, 566;

Lancaster *vs.* McBride, 5 Iredell, 421. A will made and admitted to probate in another state is a good muniment of title here without probate in Georgia: 31 Ga., 600. The will is our title here, and the deed given by the executor is nothing more than an assent to the devise. As to power of executors from other states, see Code, 2450, 2614, 2616. On the construction of these sections, see Kane *vs.* Paul, 14 Peters, 39, 40, 41; Wallace *vs.* Walker, 37 Ga., 275. An executor in one state may assent to a legacy of personalty in another, without obtaining new letters in the other state: Trecothick *vs.* Austin, 4 Mason, 35. Our law puts realty and personalty on the same footing as to assent: Code, 2451. The only distinction as to wills of realty and personalty in Georgia, is that one must follow the law of Georgia, and the other the law of the domicil: Code, sec. 8.

3d. The will does not require the trustee to give bond—nor does any law of Georgia require it. Neither does the law of Tennessee when rightly construed, but if it did, it would not affect his *status* in this state. On this and the two remaining grounds, see Johns *vs.* Johns *et al.*, 23 Ga., 39; Parsons *et al. vs.* Jones *et al.*, 26 Ga., 647-9; Willson *et al. vs.* Whitfield, 38 Ga., 283; Crawford *et al. vs.* Ross, 39 Ga., 49; 16 Ga., 409.

McCAY, Judge.

1. What is the relation of a trustee to the title to land conveyed to him by deed or will under our law? At common law he was unquestionably the owner of the land. The common law courts did not even recognize the uses for which, by the terms of the deed, he held it, but treated him as the owner of the land to all intents and purposes. Equity, it is true, compelled him to use the land for the purposes declared. But it nevertheless recognized his title—treated him as the legal owner, so far as this ownership was not inconsistent with the trusts declared in the deed. So long as the trustee conformed to the purposes declared he was recognized as having the title and ownership of the land. If it happened that the

trustee was violating his trust—applying the land in violation of the terms on which he held, equity would interfere—take the trust into its own hands and appoint a trustee. The new trustee was an officer of the court, amenable to its process and subject to its direction. The title of the original trustee was divested, the property became assets in chancery, and the person who performed the duties of management for the benefit of the beneficiaries was an officer, appointee of the court of chancery. The wishes and intent of the original grantor were sacred until the grantee became unfaithful. The title remained where he left it, until by some breach of duty on the part of the owner of the legal estate, jurisdiction arose in chancery to appoint an officer of its own. To do this it was necessary that the title of the trustee should be divested, the assets fall into the hands of the court as equitable assets, and then, and not till then, did the court acquire the power to appoint an officer to act as trustee. The process of appointment was to appoint the new trustee, and then direct the old trustee to *convey the title* to the new trustee. Nor did the new trustee hold the same unlimited power, if by the deed there was such a power, as did the old : See Levin on Trusts, 246, 259, 710, 723. A trustee, therefore created by deed or will, has, by the principles of the common law of force in this state, a title to the property conveyed. He is not a mere officer of the court, as a guardian, an administrator, etc. He holds the title—the estate at common law—that is, by the rules of chancery as administered in England. A *feme covert* or an infant might be the grantee of an estate in trust, and even an alien might of personal property, though he could not of lands, for the reason that he could not hold the titles : Levin on Trusts, 30, 41. The question, therefore, is, was it competent for Mr. John Kerr to convey real estate by his will to Mr. White in trust for any person capable of being a *cestui que trust?* True, both the grantor and grantee were non-residents of this state, but they were citizens of the United States, and they might, under the constitution of the United States, the one grant and the other be a grantee of property—real estate—in this state:

Constitution United States, article 4, section 2, paragraph 1. If Mr. Kerr might own real estate here, he might convey it or devise it to Mr. White, in fee or in trust, provided he did it according to the laws of this state. That the deed or will has a trust attached does not alter the matter. Was the title complete to Mr. White according to the laws of Georgia? The law of Tennessee has nothing to do with it; they could not make it good if it was bad—they cannot make it bad if it be good. If, by our law, White takes without conditions, the law of Tennessee cannot impose a condition. The land passes according to our law, and this is the necessary incident to the sovereignty of the state over the land within its borders. The question, therefore, is whether, under our law, Mr. White is, under the will of Mr. Kerr, entitled to the title and possession of the land referred to, and that depends, as we have said, entirely on our law. To make out the case it is to be shown that the will is executed according to the laws of Georgia. This is admitted. Its probate in Tennessee makes it a good muniment of title in this state, under the constitution of the United States, providing for full faith to the judgments of the judicial proceedings of other states : 31 *Georgia,* 600. It appears that the executor has assented to the bequest to Mr. White. That he may do this would seem to follow from the decision in 31 *Georgia,* 600. If the will is a muniment of title, the grantee takes the property conveyed under it with the assent of the appointed executor. Were these creditors here, whose rights might be interfered with, and they were complaining, our courts would doubtless protect them, and not drive them to another jurisdiction for the payment of their debts. But they are not complaining, and it is not for the present complainants to look after the interest of such creditors, if any there be.

2. In the view we have taken of this case, suggested by the pithy and strong argument of Mr. Hull, we do not think it necessary to go into the meaning of the law of Tennessee. That, in our judgment, has nothing to do with it. This is Georgia land, and the title to it is to be regulated by our own

law, and not by the law of Tennessee.    Mr. White has the title under our law, and any condition imposed by the courts of Tennessee cannot affect it.

3. On the questions of fact involved in the refusal of the injunction, we see no abuse of the discretion of the court. There is something on both sides, but we incline to think the complainants' case not a very strong one.

Judgment affirmed.