## LOFTIS *v.* ALEXANDER *et al.*

1. Where an owner of land borrowed money and gave notes therefor and a deed to secure the loan, and subsequently he or his executor (under power conferred in the will) sold the land to another, stipulating in the bond for title that the purchaser should, as part of the purchase-price, pay off and discharge the debt and deed to secure it, the purchaser had the right to make a tender to the creditor for that purpose, and the latter could not refuse to accept such tender because it was made by the purchaser from his debtor's executor instead of by such executor.

(a) There is no allegation that any bond to reconvey was given by the creditor, nor does it appear, if given, to have been transferred for value to any third party. No question, therefore, arises as to what effect such facts might have, if they existed.

2. If, at the time of the sale and the making of the bond for title, the vendor represented to the purchaser that there would be no difficulty in paying the debt at maturity (although the vendor knew that the creditor was in Europe, and would not return for several months, and that at the time of the maturity of the debt there would be no one at the place of payment to accept it, which was unknown to the purchaser); and if the agent and attorney of the creditor, with authority

so to do, agreed that his principal would accept payment from the purchaser, and, upon his return, would fix a time and place when the payment could be made, and would notify the purchaser; and if, instead thereof, the attorney served notice on the vendor of an intention to sue him and claim attorney's fees specified in the note (under the Civil Code, § 4252), which he did, and this was without any notice to the purchaser, who upon hearing of it tendered to the creditor, his attorney, and the vendor severally the full amount of the principal and interest due, equity would, on his behalf, relieve the land from liability for the interest accruing after a continuing tender, and attorney's fees, included in the judgment so recovered.

3. If a promissory note included a provision for the payment of an attorney's fee, and suit was brought thereon, but the process and service were void, and an order was taken by the plaintiff for the issuance of new process and making the suit returnable to a later term of court, this became the return term of the case, within the meaning of the Civil Code, § 4252, which authorizes the debtor to pay the debt "on or before the return day of the term to which suit is brought," without liability for attorney's fees. And if a tender was duly made by the debtor after the suit was filed but before the return day of the term thus fixed had arrived, attorney's fees could not be collected.

(a) If a purchaser of land from the debtor, with an agreement to pay off and discharge the debt and a deed made by the vendor's testator to secure it, made a tender, he could, by proper proceedings, protect the land from the lien of a judgment for attorney's fees.

4. The ground of the demurrer based on misjoinder of parties and causes of action was not meritorious.

JANUARY 24, 1913.

Equitable petition. Before Judge Bell. Fulton superior court. October 18, 1911.

*John A. Boykin* and *J. B. Stewart,* for plaintiff.

*R. B. Blackburn, Lowndes Calhoun,* and *L. Z. Rosser,* for defendants.

LUMPKIN, J. Loftis brought his equitable petition, seeking to enjoin the collection of an execution against his vendor and the land bought from him, for a specified sum as principal, interest, and cost, so far as it included interest accruing after an alleged tender by the plaintiff, and attorney's fees, and also praying that the judgment be canceled to that extent as a lien on the land, which had been previously conveyed by the vendor to secure a loan. The plaintiff offered to pay into court the full amount of the execution, and prayed that the amount admitted to be due might be paid to the plaintiff, and the balance be held by the sheriff to await the further decree of the court. It was averred that the estate of the plaintiff's vendor was not liable for alleged tortious

acts of the executor, and that the latter as an individual was insolvent.

1. A case growing out of the same transaction was formerly before this court. *Loftis* v. *Alexander,* 137 *Ga.* 65 (72 S. E. 479). When Alexander, the holder of the notes and security deed made by Calhoun's testator, brought suit against Calhoun, as executor, on the notes, Loftis, the purchaser from Calhoun, sought to be made a party and to set up alleged equities against the plaintiff and defendant in that case. It was held that he could not do so. The ruling went only to that mode of procedure. It did not declare that Loftis had no equitable right. He now files an equitable petition against both of them. According to his allegations, Alexander held the notes of Calhoun's testator and a deed to secure their payment. Loftis bought the tract of land from the executor (who had power to sell), and two bonds for title were given to him for two different parts of it; one of them recited as its consideration a cash payment of $1,500 and certain notes given for deferred payments, and also that the land was subject to "a loan deed" given to Alexander for $4,500, which Loftis had assumed. The other bond recited as its consideration the payment of $1,000 cash and the assumption of "the loan deed" and debt to Alexander, and obligated the maker to execute a title to the property described therein upon the payment of the secured debt. Thus, as to both parcels which were covered by the deed to secure the loan, Loftis was a purchaser from the debtor's executor, with part of the purchase-money paid and an agreement to discharge the secured debt, as one of the terms of the purchase. As to one of the parcels, all that remained for the purchaser to do, in order to acquire a title, was to discharge the incumbrance. Relatively to the vendor, he undoubtedly had the right to do so. Relatively to the holder of the incumbrance he also had the right to free the property from a lien or security deed. Whether this be rested on the theory of subrogation or of agency coupled with an interest, equity would not permit the holder of an incumbrance to arbitrarily refuse to receive payment from such a vendee of the debtor, or his executor, and proceed to subject the land and force it to sale by the sheriff, where the vendee stands ready to pay and tenders payment.

In Harris's Law of Subrogation, 10, it is said: "It is a well-established rule that any party who holds an interest in property

which is covered by mortgage or other incumbrance may, for his own protection, by paying the debt which is a charge upon it, and removing the incumbrance, thus save himself from loss or prejudice, and then, if he is subrogated, it presents a question, or may present a question of successive claims on the same property." A mere stranger has no right to tender money to discharge an incumbrance on property, or redeem it. But one who has an interest in the property is not a stranger. Id. 547. In as early an authority as Coke upon Littleton it was said (side p. 207b) : "And note, he that hath interest in the condition on the one side, or in the land on the other, may tender." See also Grafflin v. State, 103 Md. 171 (63 Atl. 373, 7 Ann. Cas. 1061, and note on page 1065) ; Harris on Tender, 91, 94. In this State a deed to secure a debt is not the same as a mortgage. Such a deed conveys title; a mortgage is only a lien. But a deed of that character is in several particulars similar to a common-law mortgage; and one of them is as to the right of one who buys the property from the maker of the deed and obtains an equitable interest therein to protect his purchase by paying off the secured loan, especially where, as part of the contract of purchase, he agrees to make such payment.

It is suggested that the holder of the deed to secure the debt ought not to be required to make a title without surrender of his bond to reconvey. It is not alleged that any bond was given by him. If one was made, and is still held by the vendor of the present plaintiff, it can be brought in and delivered up under a proper decree. If it found its way into the hands of an innocent assignee for value, and without notice, other than Loftis, this might raise a different question. But no such thing appears from the pleadings. If it be conceded that Loftis has the equitable right now to pay off the execution in full, and thus clear away the incumbrance, he equally had the right to pay the debt before it was reduced to execution. We hold that under the allegations of the petition he had such a right, and Alexander or his authorized agent had no right to refuse to accept payment merely because the tender was made by Loftis, the purchaser, instead of by his vendor. The tender was also alleged to be continuing.

2. If Loftis had the right to make a tender, did he do so in proper time? He alleged, that his vendor represented that there would be no difficulty in paying Alexander, although the vendor

knew that Alexander was then in Europe and would not return until after the maturity of the debt, but this was unknown to Loftis; that there was no one accessible at the maturity of the debt, or for several months thereafter, to whom tender or payment could be made; that the attorney and agent of Alexander, who had authority to do so, agreed that Alexander would receive payment from Loftis, and, on his return from Europe, would fix a time and place for that purpose and notify Loftis; but, instead of so doing, he gave notice to Calhoun, executor, and brought suit on the notes of the testator for the principal and interest, and also for attorney's fees, and recovered a judgment, although Loftis tendered to Alexander, his attorney and agent, and also to Calhoun, executor, the full amount of principal and interest; and that Loftis was not informed of the giving of any notice of an intention to sue. If these allegations be assumed to be true, as they must be on demurrer, the plaintiff was misled and caused to delay making a tender. The creditor could not cause him to delay and at the same time add attorney's fees to the incumbrance on the property because of such delay.

3. Moreover it was alleged, that the suit of Alexander against Calhoun was originally brought to the November term, 1910, of the superior court; that the process was addressed to Calhoun, and not to him as executor; that the suit was not answered; that thereafter, on February 14, 1911, on motion of the attorney of Alexander, an order was passed by the court amending the process and directing that new process issue and be served; and that such new process was issued and served, returnable to the March term of court; but that on November 5th the tender had been made by Loftis. By section 4252 of the Civil Code it is declared that obligations to pay attorney's fees upon any note or other evidence of indebtedness, in addition to interest, are void, and no court shall enforce such agreements, unless the debtor shall fail to pay such debt "on or before the return day of the court to which suit is brought for the collection of the same; provided, the holder of the obligation sued upon, his agent, or attorney notifies the defendant in writing, ten days before suit is brought, of his intention to bring suit, and also of the term of court to which suit will be brought." The evident purpose of this section was to require notice to the debtor before the bringing of suit, and to grant the

privilege of paying the debt until the return day of the term to which suit is brought. Attorney's fees specified in a note can only be collected on the statutory terms; otherwise the law declares the agreement to pay them, in addition to interest, to be void. Under the allegations, as to this statute the filing before the November term and the prayer for process returnable to that term were abrogated by the act of the plaintiff's attorney. The suit was no longer returnable to that term, but to another and later term. The later term became the return term to which the case was brought, and, under the statute, the debtor (or one having the right to do so) could make the tender before the return day of that term.

4. There was no misjoinder of parties or causes of action in joining the vendor as a defendant in the same equitable action with the holder of the loan deed. It is proper that all parties having an interest in the subject-matter should be made parties to the equitable proceeding, so that full and complete justice may be done. No distinct objection was raised to the making of the attorney and alleged agent of the holder of the security deed a party. Apparently he was made a defendant on the idea that, as the attorney who brought suit on the notes, he was interested in the collection of the stipulated attorney's fees, which is the main cause of the present litigation.

The prayers of the petition are somewhat meagre for a complete settlement of the equities of all parties in interest; but the demurrer was not directed against them.

*Judgment reversed. All the Justices concur.*