## SIMS *v.* JONES *et al.*

1. Where an instrument is executed and payable in the State of North Carolina by parties all residing in that State, purporting to convey certain standing timber in this State to one of the parties to the contract, the law of the place where the property is situated (the lex loci rei sitæ) controls, in order to determine the character of the instrument, whether it is a deed to secure a debt, as in the present case, or whether it is a mortgage.
2. Where an instrument is executed and made payable in the State of North Carolina between citizens of that State, which is in the form of a deed conveying standing timber in this State, to secure a debt, but which has a defeasance clause declaring the instrument null and void on the payment by the debtor of the sum due, such instrument under the law of Georgia is a mortgage and not a deed, and does not convey the title to the timber, but creates a lien thereon.
3. Under the law of Georgia the equity of redemption to timber mortgaged and standing on land is subject to levy and sale in favor of the plaintiff in a common-law fi. fa. against one of the mortgagors who is a defendant in such fi. fa.
4. The court erred in granting the injunction.

No. 3988.    JUNE 10, 1924.

Injunction. Before Judge Shurley. Lincoln superior court. September 10, 1923.

M. H. Jones, Bank of Sampson, and Walter F. Peterson brought an equitable petition against Anna C. Sims, W. S. Harrison, sheriff, and W. S. Harrison Jr., deputy sheriff, in which the plaintiffs sought to enjoin a sale by the sheriff and deputy sheriff of certain standing timber of M. H. Jones, under an execution based upon a general judgment in favor of Anna C. Sims against M. H. Jones.

The defendant Sims filed a demurrer and a verified answer. It was admitted that the instrument described in the petition, dated November 7, 1917, from M. H. Jones, D. C. Johnson, Eula M. Jones, and Sudie Johnson, to Walter F. Peterson as trustee of the Bank of Sampson, was executed in the State of North Carolina; that exhibit A attached to the complaint was a true copy of the original instrument; that all the parties to the instrument at the time of its execution were residents of the State of North Carolina; that the note secured by the instrument was executed and made payable in North Carolina; that the makers and payee were all residents of the State of North Carolina at the time of the execution of the note; and that the common-law rule that a mortgage passed the title to the property mortgaged, and did not merely create a lien thereon at the time of the execution of the instrument, was and still is of force in the State of North Carolina. M. H. Jones testified, that $8200 and interest of the indebtedness secured by the instrument was still unpaid by him to the Bank of Sampson; that the unpaid indebtedness was past due; and that at the time of the execution of the instrument neither he nor any of the parties thereto knew of the law of Georgia on the subject of mortgages, or that it differed from the North Carolina law. The trial judge granted the injunction prayed for, holding that the law of North Carolina controlled in determining whether the title passed by the instrument. To this judgment Anna C. Sims excepted on the grounds: (1) That at the time of the rendition of the judgment in favor of Anna C. Sims against M. H. Jones, the title to the standing timber levied on was in the defendant in fi. fa., and the same was subject to levy and sale under the execution issued upon the judgment, and no legal reason appeared why it should not be subjected to the fi. fa. (2) That the instrument and note thereby secured were executed in North Carolina and by residents of North Carolina and the note was payable in North Carolina; and the court ruled that the effect of the instrument as passing the title to Georgia realty or merely creating a lien thereon was to be determined by the law of North Carolina. (3) That the court held that at the time of the levy of the execution the title of the standing timber had passed out of M. H. Jones into W. F. Peterson, trustee of the Bank of Sampson, by virtue of the instrument of November 7, 1917. (4) That the court refused to sustain, as cause

against the grant of the injunction, the grounds of demurrer presented. (5) That the judgment is contrary to law and the admitted facts of the case. The instrument in question is in the form of a warranty deed to the timber rights, franchises, privileges, and easements referred to, with a proviso that if the parties of the first part or their legal representatives shall pay over to the party of the third part or to its assigns the full sum of $21,300, "according to the terms and conditions named in the note hereby secured, then and in that event this deed shall be utterly null and void." There is also a provision, in case of default in the payment of the note, for the party of the second part to advertise and sell and convey the land to the highest bidder in fee simple, etc.

*Hamilton Phinizy,* for plaintiff in error.

*O. Lee White* and *C. J. Perryman,* contra.

HILL, J. (After stating the foregoing facts.)

1. On the trial it was admitted that the instrument described in plaintiff's petition was dated November 7, 1917, was signed by M. H. Jones, D. C. Johnson, Eula M. Jones, and Sudie Johnson, to Walter F. Peterson as trustee of the Bank of Sampson, and that it was executed in the State of North Carolina, and that exhibit A attached to the petition, which is in the form of a warranty deed with a defeasance clause, conveying the timber in question, is a true copy of the original instrument, and that all the parties to the instrument at the time of the execution were residents of the State of North Carolina. It was further admitted that the note secured by the instrument was executed and made payable in North Carolina, and that the makers and payee were residents of North Carolina at the time of the execution of the note; that the common-law rule that a mortgage passed the title to the property mortgaged, and did not merely create a lien thereon, at the time of the execution of the instrument, was still of force in the State of North Carolina.

The controlling question in the case is whether the instrument, the substance of which is set out in the statement of facts, is to be construed according to the laws of North Carolina or according to the laws of Georgia. It was pleaded and proved, as well as admitted by both parties, that the law of North Carolina provides that mortgages pass title to the mortgagee, and do not merely create a lien on the property mortgaged or conveyed. So, for the purposes of this case, we will not pursue that question further. The court

below evidently took the view that the law of North Carolina controlled, and granted the injunction.

The defendant in error relies on the Civil Code (1910), § 8, which provides that "The validity, form, and effect of all writings or contracts are determined by the laws of the place where executed. When such writing or contract is intended to have effect in this State, it must be executed in conformity to the laws of this State, excepting wills of persons domiciled in another State or country." It is insisted that the cardinal rule of construction and interpretation of contracts is to ascertain the intention of the parties to the contract, and that that rule applies to the contract under review here. In support of their contention the defendants in error cite 2 Elliott on Contracts, § 1113, which declares that "as a rule the law of the place where the contract is made is, without any express assent or agreement of the parties, incorporated into and forms a part of the contract, and the rule that contracts are to be construed according to the law of the place of their execution, and that the law, including city ordinances, in force upon any subject that is made the subject-matter of any contract enters into the same, has been held to apply just as if the law were actually and expressly made a part of the agreement between the contracting parties." And see section 1110 of the same author.

Civil Code, § 8, supra, seems to be broad and sweeping in its effect. It provides that "The validity, form, and effect of *all writings or* contracts [italics ours] are determined by the laws of the place where executed," etc. There is no statute, so far as we are aware, on which this section was based. It has, however, all the binding force of an act of the legislature, because of the adoption by the legislature of the codes wherein it appears. *Wilensky v. Central Ry. Co.*, 136 *Ga.* 889, 891 (72 S. E. 418). It was said in that case that "It has been several times held by this court that a section of the code, not of original statutory origin, would be construed merely as a codification of the existing law, unless there be words in the section which manifestly demand a construction which would change the rule in force at the time the code was adopted." The section of the code referred to certainly was not intended to change the rule in Georgia so as to require our courts to apply the law of lex loci as to the construction of contracts where the title to *real estate* in this State is involved, unless the

words used *manifestly demand* a different construction. We are of the opinion that the words used in the statute do not demand the construction contended for.

Coming to the real question in the case, we are of the opinion the *lex loci rei sitæ* controls as to the effect that all instruments, executed out of the State have on real estate located in this State. The outside authorities seem to sustain this position. We cite a few of them. "Every nation, having authority to prescribe rules for the disposition and arrangement of all property within its own territory, may impress on it any character which it may choose; and therefore the law of the place where property is situated, the lex loci rei sitæ, must be resorted to to determine whether it be 'real' or 'personal;' and when a sovereignty prescribes that a certain class of property shall be deemed movable, or shall be deemed immovable, or shall have that character, no other State may impugn the classification." 5 R. C. L. 924. In 12 C. J. 456, the rule is thus laid down: "The lex situs, lex loci rei sitæ, or the law of the place where the thing is situated, is universally regarded as furnishing the rules governing the transfer, encumbrance, or devolution of real or immovable property. . . ." Again, "Under these rules the lex situs governs as to the transfer of land, covenants running with the land, conversion of property from realty into personalty, construction and operation of contracts for the sale of land, and in general as to the construction of deeds; the validity, construction and effect of mortgages of real estate." 12 C. J. 480; 27 Cyc. 975. "The validity of a mortgage of real estate and its construction and effect are controlled by the law of the State where the mortgaged property is situated, although the mortgage is executed and the parties reside in another State." "From the general principles heretofore stated it naturally follows that all instruments affecting the title to real estate, no matter what their nature, must be governed, as to their execution, construction, and legal sufficiency, exclusively by the laws of the State in which the real estate is situated." 5 R. C. L. 952. "So omnipotent is the lex loci rei sitæ that it even governs in regard to the capacity of the person making the instrument, no matter what its nature, and also as to the capacity of the person who is to take." 5 R. C. L. 953.

There is authority for the proposition that the lex situs de-

termines whether the security creates a lien or passes the absolute title to property, whilst the lex loci contractus controls the contract, the performance of which is thus secured. Thus, in 5 R. C. L. 927, it is stated that "It seems to be universally recognized that the lex loci rei sitæ determines the nature of an instrument, whether it shall be given effect as a mortgage or as an absolute conveyance."

In Simpson v. Hillis, Ann. Cas. 1913C, 230 (note), it is said that "The validity of the lien is governed by the law of the place where the land is located. Bramblet v. Commonwealth Land etc. Co., 83 S. W. 599, 26 Ky. L. Rep. 1176. Such law determines the age at which a married woman may join her husband in a mortgage. Sell v. Miller, 11 Ohio St. 331. Such a law also determines the legality of the execution of a mortgage given as security, the extent and character of the lien thereby created, and the construction of the instrument. Beso v. Eastern Bldg. etc. Asso., 16 Pa. Supr. Ct. 222. In short, the law of the situs of the property determines the effect of the instrument. Sinclair v. Gunzenhauser (Ind.), 98 N. E. 37; Klinck v. Price, 4 W. Va. 4, 6 Am. Rep. 268, as for instance, whether it is an absolute conveyance or a mortgage. Allen v. Allen, 95 Cal. 184, 30 Pac. 213, 16 L. R. A. 646; Hughes v. Winkleman, 243 Mo. 81, 147 S. W. 994; Baxter v. Willey, 9 Vt. 276, 31 Am. Dec. 623. A distinction is, moreover, drawn between the mortgage, which is the security for the performance of a contract, and the contract itself. The contract is not necessarily governed by the law of the place where the security is located. See Conradt v. Lepper, 13 Wyo. 473, 81 Pac. 307, 82 Pac. 2."

In L. R. A. 1916A, 1029, it is said: "In general, however, it may be said—applying specifically the general criterion already suggested, supra, 1,—that questions that relate distinctively and directly to the mortgage as distinguished from the personal obligation are to be referred to the lex rei sitæ as such, and that questions that relate primarily and distinctively to the personal obligation and only indirectly affect the mortgage may be governed by another law." Further, on page 1031: "The court may pass by the lex rei sitæ and recognize the intention ascribed to the parties by the lex loci contractus, to create a mortgage; but having held, in accordance with the lex loci contractus, that the instrument is a mortgage, it must determine its effect as a mortgage upon the title to the real

property according to the lex rei sitæ. . . But the result of the application of the lex rei sitæ to the second question is not affected by the lex loci contractus any more than it would be by other indications of the intention of the parties, since, ex hypothesi, the lex rei sitæ is a rule of property and independent of the intention of the parties."

While in Georgia we find no case directly in point, the principle has been ruled in certain cases. In *Ulman, Magill & Jordan Woolen Co.* v. *Magill,* 155 *Ga.* 555 (117 S. E. 657), this court held that "The statute law of Missouri, providing that where a married woman signs a promissory note as surety for her husband, she is liable for the amount of the note, will not be enforced in this State in a case where such married woman, living in Missouri, signs in Missouri a promissory note as surety for her husband, the contract to be performed in Missouri, and while she is still domiciled in Missouri she is sued by attachment in Georgia, and the attachment is executed by seizing property of hers located in Georgia." In *Kerr* v. *White,* 52 *Ga.* 362 (reaffirmed in *Bank* v. *Harrison,* 68 *Ga.* 463, 470), where a will was executed in the State of Tennessee devising lands in this State in trust for certain children, it was held that the trustees held the title under the Georgia law, and that the law of Tennessee prescribing on what terms the trustee should execute the trust, did not apply. In the decision it was said: "This is Georgia land, and the title to it is to be regulated by our own law and not by the law of Tennessee, . . and any condition imposed by the courts of Tennessee cannot affect it." So, we are of the opinion that the present contract is to be construed according to the lex loci rei sitæ, or according to the law where the property is located—in the present instance in the State of Georgia. See *Sally* v. *Bank of Union,* 150 *Ga.* 281 (3) (103 S. E. 460).

2. Having held in the preceding division of this opinion that in a contract like the present the lex loci rei sitæ governs, and it appearing that the property described in the instrument is located within the State of Georgia, it remains to be determined whether the instrument is a deed to secure a debt, or whether it is a mortgage. There is nothing in the record to indicate that there was a bond for reconveyance of the property. In this State a deed to secure a debt is not the same as a mortgage. A deed to secure a debt conveys the title to the lands conveyed; a mortgage is only a

lien upon the property. *Loftis* v. *Alexander,* 139 *Ga.* 346, 349 (77 S. E. 169, Ann. Cas. 1914B, 718). The instrument under consideration, while purporting in one portion of it to convey the title, has a defeasance clause in the following language: "Provided, however, that if the parties of the first part, or their legal representatives, shall pay over to the party of the third part, or to its assigns, the full sum of $21,300, according to the terms and conditions named in the note hereby secured, then and in that event this deed shall be utterly null and void; but if default shall be made in the payment of said note at maturity, or at such time thereafter as may be agreed upon by the parties in writing, then and in that event it shall be lawful, and the party of the second part, demand having been made upon him by the holder of said note, shall proceed to sell the property hereby conveyed at public outcry at the court-house door. . ." In such a case it has been held that such an instrument is a mortgage and not a deed, and does not convey the title. *Loftis* v. *Alexander,* supra; *Burckhalter* v. *Planters Bank,* 100 *Ga.* 428, 432 (28 S. E. 236); *Scott* v. *Hughes,* 124 *Ga.* 1000 (53 S. E. 453).

In *Burckhalter* v. *Planters Bank,* supra, it was said by Mr. Justice Atkinson: "The test then whether an instrument be a deed or mortgage is necessarily whether the interest acquired by the holder of an instrument is such an interest as can be extinguished by the voluntary act of the debtor alone. If it can be, the instrument is defeasible, and does not pass . . an absolute title." In *Scott* v. *Hughes,* 124 *Ga.* 1000, 1002 (53 S. E. 453), Mr. Justice Cobb, quoting from the decision in the *Burckhalter* case, said: "The ordinary mortgage is usually in the form of a conveyance of an absolute title, but with a defeasance clause added. That the defeasance clause is not in the usual form or usual place does not make it any the less a defeasance clause. It is distinctly provided in the paper in question that if the amount which is specified as the consideration of the deed is paid by a given date, the instrument 'shall be void, otherwise in full force.' The language of this deed as to what will operate to defeat it is almost in terms the defeasance clause usually found in a technical mortgage. The paper was a mortgage, and not a deed. See *Ward* v. *Lord,* 100 *Ga.* 407; *Lubroline Oil Co.* v. *Athens Bank,* 104 *Ga.* 380." *Penton* v. *Hall,* 140 *Ga.* 235, 238 (78 S. E. 917).

Applying the test laid down in the foregoing decisions to the facts of the present case, we are of the opinion that the instrument under consideration is a mortgage and not a deed.

3. One other question remains to be determined; and that is, whether the timber mortgaged is subject to levy and sale in favor of the plaintiff in a common-law fi. fa. against one of the mortgagors. It has been held that the equity of redemption in mortgaged property in this State is subject to levy and sale. *Winter* v. *Garrard,* 7 *Ga.* 183; *Harwell* v. *Fitts,* 20 *Ga.* 723; *Tarver* v. *Ellison,* 57 *Ga.* 54. Property mortgaged may be sold under other process, subject to the lien of the mortgage. If the mortgage is foreclosed, the mortgagee may place his execution in the hands of the officer of the law making the sale, and cause the title unincumbered to be sold, and claim the proceeds according to the date of his lien. Civil Code (1910), § 3274.

4. Applying the foregoing rulings to the facts of this case, the court below erred in granting the injunction.

*Judgment reversed. All the Justices concur.*